# United States Court of Appeals for the Federal Circuit

---

**JACK D. MORRIS,**
*Claimant-Appellant,*

**v.**

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2011-7061

---

Appeal from the United States Court of Appeals for Veterans Claims in case no. 09-0017, Judge Robert N. Davis.

---

Decided: May 15, 2012

---

KENNETH M. CARPENTER, Carpenter, Chartered, of Topeka, Kansas, argued for claimant-appellant.

SCOTT D. AUSTIN, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and MARTIN F. HOCKEY, JR., Assistant Director. Of counsel on the brief were MICHAEL J. TIMINSKI, Deputy

Assistant General Counsel, and DANA RAFFAELLI, Attorney, United States Department of Veterans, of Washington, DC.

---

Before DYK, SCHALL, and MOORE, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* SCHALL.
Concurring opinion filed by *Circuit Judge* DYK.

SCHALL, *Circuit Judge*.

Jack D. Morris appeals the October 15, 2010 decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") in *Morris v. Shinseki*, No. 09-0017, 2010 WL 4068749 (Vet. App. Oct. 15, 2010). In its decision, the Veterans Court affirmed the September 12, 2008 decision of the Board of Veterans' Appeals ("Board") in *In re Morris*, No. 04-38 491 (Bd. Vet. App. Sept. 12, 2008) ("*2008 Board Decision*"). In that decision the Board found no clear and unmistakable error ("CUE") in its February 9, 1988 decision denying Mr. Morris's claim for service connection for a psychiatric disorder. *See In re Morris*, No. 87-11 982 (Bd. Vet. App. Feb. 9, 1988) ("*1988 Board Decision*"). We affirm.

BACKGROUND

I.

Mr. Morris served on active duty in the United States Army from July 31, 1964, to October 6, 1964. *1988 Board Decision* at 2. His entrance examination revealed no psychiatric abnormality. Subsequently, in mid-September of 1964, he underwent an examination in connection with his separation from the service. That examination also revealed no psychiatric abnormality. At the time, Mr. Morris did, however, complain of experiencing "nervous trouble and other symptoms." *Id.* Mr.

Morris's clinical record cover sheet dated October 6, 1964, sets forth the following diagnosis: "Passive aggressive reaction, chronic, moderate, unchanged, manifested by periods of anxiety and inability to express anger. Stress: Minimal.  Predisposition: Moderate, unstable family. Disability: Moderate."

On January 21, 1966, Mr. Morris filed with the Department of Veterans Affairs ("VA") a claim for disability compensation for a psychiatric disorder.  In support of his claim, he stated that, while in basic training, he had suffered mental and physical abuse from his platoon sergeant, which had caused him to experience a nervous breakdown.  In a May 5, 1966 rating decision, the VA's Regional Office ("RO") denied the claim.  Noting that the file did not reflect any record of treatment for a nervous condition during service, the rating specialists concluded that Mr. Morris's condition was in a chronic stage and had existed prior to service.  The RO thus determined that there was no indication that Mr. Morris's condition was incurred in or aggravated during service.

## II.

On January 31, 1986, Mr. Morris sought to reopen his claim for a psychiatric disorder by providing lay statements and a statement from a therapist.  After the RO concluded that the additional evidence did not constitute new and material evidence sufficient to warrant reopening of the claim, Mr. Morris appealed to the Board.

In its February 9, 1988 decision, the Board determined that, contrary to what the RO had found, Mr. Morris had come forward with new and material evidence in support of his claim.  *1988 Board Decision* at 5.  However, after reviewing the evidence, the Board concluded that the evidence did not show that Mr. Morris's "psychiatric symptoms" were "due to other than a personality

disorder." *Id.* "Under 38 C.F.R. § 303(c)," the Board noted, "a personality disorder is not a disease within the meaning of applicable legislation providing for compensation benefits." *Id.* at 4. Based upon the VA's regulation, the Board therefore denied Mr. Morris's claim of service connection for a psychiatric disorder. *Id.* at 6.[1]

On February 23, 1988, the VA considered medical evidence from the University of South Florida psychology department. Mr. Morris had submitted this evidence on May 5, 1987, while his appeal before the Board was

---

[1] The version of 38 C.F.R. § 3.303(c) in effect at the time of the *1988 Board Decision* is identical to the present version of the regulation. *Compare* 38 C.F.R. § 3.303(c) (1987) *with* 38 C.F.R. § 3.303(c) (2011). Pertinent to this case, § 3.303(c) provides in relevant part as follows:

> *Preservice disabilities noted in service*: There are medical principles so universally recognized as to constitute fact (clear and unmistakable proof), and when in accordance with these principles existence of a disability prior to service is established, no additional or confirmatory evidence is necessary. . . . In the field of mental disorders, personality disorders which are characterized by developmental defects or pathological trends in the personality structure manifested by a lifelong pattern of action or behavior, chronic psychoneurosis of long duration or other psychiatric symptomatology shown to have existed prior to service with the same manifestations during service, which were the basis of the service diagnosis, will be accepted as showing preservice origin. Congenital or developmental defects, refractive error of the eye, personality disorders and mental deficiency as such are not diseases or injuries within the meaning of applicable legislation.

pending. Following a further denial of his claim, Mr. Morris presented additional medical evidence to the VA. This evidence indicated that Mr. Morris had been diagnosed with schizophrenia and included an opinion from a VA physician that the schizophrenia had its onset during service. On June 14, 1990, the Board again denied Mr. Morris's claim of service connection for a psychiatric disorder, concluding that the evidence still was not sufficient to show that the previous diagnosis of a personality disorder was in error. *In re Morris*, No. 90-02 895, slip op. at 8 (Bd. Vet. App. June 4, 1990). Mr. Morris then appealed to the Veterans Court.

In the wake of a remand from the Veterans Court in March of 1992, the Board, in May of 1992, received the opinion of a psychiatrist who was an examiner for the Board. Based upon that opinion, the December 1992 opinion of an independent medical examiner, as well as additional evidence before it, the Board reopened Mr. Morris's claim on February 3, 1993 and concluded that "the preponderance of the old and new evidence, considered together, supports the claim for service connection for schizophrenia." *In re Morris*, No. 90-02 895, slip op. at 4 (Bd. Vet. App. Feb. 3, 1993). At the same time, however, the Board determined that its February 1988 decision "was well supported by the evidence then of record and in accordance with all applicable legal criteria" and that the decision was thus final. *Id.*, slip op. at 9. Subsequently, in April of 1993, the RO awarded service connection for schizophrenia effective from May 5, 1987, and assigned a 100 percent rating from that date. The RO assigned May 5, 1987, as the effective date because that was when the VA received certain additional evidence from Mr. Morris. Thereafter, in 1996, the Board denied Mr. Morris's claim that the 1966 RO decision contained CUE and that the award of service connection therefore

should be made retroactive to the date of his 1966 claim for benefits. *In re Morris*, No. 94-06 408 (Bd. Vet. App. Apr. 19, 1996).

## III.

In September of 2004, Mr. Morris filed a motion with the Board in which he argued that the *1988 Board Decision* was tainted by CUE because the Board failed to correctly apply 38 U.S.C. §§ 105(a), 1110, and 1111. According to Mr. Morris, the Board improperly relied upon the existence in his service medical records of a "non-compensable" psychiatric condition (personality disorder) as a basis for denying disability compensation. Instead, he urged, the Board should have relied upon the presumption of service connection under § 105(a) and the presumption of sound condition under § 1111 to award him compensation under § 1110 for a psychiatric disorder. *2008 Board Decision* at 4-5.

In its September 12, 2008 decision, the Board denied Mr. Morris's CUE claim. The Board began by noting the claim that Mr. Morris had presented in 1988. The Board pointed out that, at that time, Mr. Morris contended that, during active duty, he developed, and was treated for, an acquired psychiatric disability; that he was in sound condition when he entered the service; that he was harassed by a drill sergeant, which resulted in his development of a nervous disorder; and that, following separation from the service, his psychiatric problems continued. *2008 Board Decision* at 9. Continuing, the Board noted that the 1988 Board had determined that the initial service medical records on file showed that any psychiatric symptoms present during service were acute and transitory and attributed to a personality disorder. *Id.* The 1988 Board also had determined, it was noted, that a chronic acquired psychiatric disorder was not indicated

during service or on an examination for separation from active duty. *Id.* In addition, the Board pointed out, the 1988 Board had determined that, although more recently developed medical records referred to an investigation of a "maltreatment incident," those records did not demonstrate the presence of an acquired psychiatric disorder during service but, instead, psychiatric symptoms associated with a personality disorder, which for short periods resulted in symptoms such as anxiety and depression. *Id.* Finally, the Board set forth the 1988 Board's ultimate conclusions: (1) that a chronic acquired psychiatric disorder was not incurred or aggravated in service; (2) that a personality disorder is a congenital or developmental defect and not a disease within the meaning of the applicable regulation, 38 C.F.R. § 3.303(c); and (3) that evidence received subsequent to the May 1966 rating decision, which was not appealed, did not present a new factual basis warranting the grant of service connection for a psychiatric disorder. *Id.* at 10.

Turning to Mr. Morris's contentions, the Board first rejected the argument that, under 38 U.S.C. § 105(a) a veteran is entitled to a statutory presumption of service connection for an alleged disability. The Board reasoned that § 105(a) pertains to line of duty and misconduct considerations, neither of which was on appeal or before the Board in 1988.[2] *2008 Board Decision* at 11. Section

---

[2]    38 U.S.C. § 105(a) states in relevant part:

> An injury or disease incurred during active military, naval, or air service will be deemed to have been incurred in line of duty and not the result of the veteran's own misconduct when the person on whose account benefits are claimed was, at the time the injury was suffered or disease contracted, in active military, naval, or air service, whether on active

105(a), the Board stated, "does not serve to establish a presumption that any claimed disease or injury in service is entitled to service connection, because a claimant makes a claim for service connection." *Id.*

The Board viewed Mr. Morris's main argument to be that the 1988 Board had failed to afford him the presumption of sound condition under 38 U.S.C. § 1111, which, he claimed, would have entitled him to compensation under 38 U.S.C. § 1110 for a psychiatric disorder.[3] Addressing this argument, the Board stated that "[t]he veteran was afforded the presumption of soundness with respect to the issue of service connection for an acquired psychiatric disorder in the February 1988 Board decision." *2008 Board Decision* at 11. After making this statement, the Board observed that the 1988 Board had noted that Mr. Morris's entrance psychiatric examination was normal

---

duty or on authorized leave, unless such injury or disease was a result of the person's own willful misconduct or abuse of alcohol or drugs.

[3] 38 U.S.C. § 1110 provides that a veteran shall be compensated for a disability arising from an injury or disease incurred or aggravated while the veteran was on active duty. 38 U.S.C. § 1111 supplements § 1110 and states:

For the purposes of section 1110 of this title, every veteran shall be taken to have been in sound condition when examined, accepted, and enrolled for service, except as to defects, infirmities, or disorders noted at the time of the examination, acceptance, and enrollment, or where clear and unmistakable evidence demonstrates that the injury or disease existed before acceptance and enrollment and was not aggravated by such service.

and that Mr. Morris's in-service symptoms were associated with a personality disorder and were not due to a chronic acquired psychiatric disability. *Id.* The Board stated that the 1988 denial of service connection "was not made on the basis that the veteran had a preexisting defect, infirmity, or disorder which was not aggravated during service. Rather, the denial of service connection for an acquired psychiatric disability was made on the basis that an acquired psychiatric disability was not present during service and was not incurred in service." *Id.* at 12. Putting the matter another way, the Board reasoned that "the denial of service connection for a chronic acquired psychiatric disability was based on a determination that the veteran did not have this disability during service and any post-service symptoms did not establish that a chronic acquired psychiatric disability originated during service. The . . . denial was not on the basis that an acquired psychiatric disability preexisted service and was not aggravate therein." *Id.* Finally, the Board remarked that, although Mr. Morris was arguing that the 1988 Board had failed to afford him § 1111's presumption of soundness, what he really was complaining about was the 1988 Board's weighing of the evidence and its finding that, during his period in service, he had suffered from a personality disorder, which by regulation is not compensable. *Id.* at 13. *See* 38 C.F.R. § 3.303(c). Based upon its analysis, the Board denied Mr. Morris's motion for revision of the 1988 Board decision on the basis of CUE. *2008 Board Decision* at 14.

## IV.

Mr. Morris appealed the Board's denial of his motion to the Veterans Court. Before the Veterans Court, he pressed the same arguments that he had advanced before the Board. He again argued that the 1988 Board had failed to apply correctly 38 U.S.C. §§ 105(a), 1110, and

1111. The Veterans Court rejected Mr. Morris's arguments. Noting that Mr. Morris had offered no evidence that the 1988 Board incorrectly considered his condition a personality disorder, the court stated that it previously had held that § 1111 does not apply to personality disorders in view of the language of 38 C.F.R. § 3.303(c). *Morris v. Shinseki*, No. 09-0017, 2010 WL 4068749 at \*2 (Vet. App. Oct. 15, 2010) (citing *Winn v. Brown*, 8 Vet. App. 510, 516 (1996) ("A personality disorder . . . is not the type of disease- or injury related-defect to which the presumption of soundness can apply.")) The court therefore affirmed the Board's September 12, 2008 decision that found no CUE in its 1988 decision. This appeal followed.

## DISCUSSION

## I.

Our jurisdiction to review decisions of the Veterans Court is limited by statute. 38 U.S.C. § 7292(a); *see Forshey v. Principi,* 284 F.3d 1335, 1338 (Fed. Cir. 2002) (en banc), *superseded on other grounds by* Veterans Benefits Act of 2002, Pub. L. No. 107-330, § 402(a), 116 Stat. 2820, 2832. We have jurisdiction to review a decision of the Veterans Court "with respect to the validity of a decision of the [Veterans] Court on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the [Veterans Court] in making the decision. 38 U.S.C. § 7292(a). Our authority extends to deciding all relevant questions of law, and we can set aside a regulation or an interpretation of a regulation relied upon by the Veterans Court when we find it to be "arbitrary, capricious, and an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of

statutory jurisdiction, authority, or limitations; or in violation of a statutory right; or without observance of procedure required by law." *Jones v. West,* 194 F.3d 1345, 1350 (Fed. Cir. 1999); *see* 38 U.S.C. § 7292(d)(1). Our authority, however, does not extend to the ability to review factual determinations or the application of a law or regulation to a particular set of facts unless a constitutional issue is presented. 38 U.S.C. § 7292(d)(2). As set forth below, the sole issue in this case is whether the Veterans Court, in affirming the *2008 Board Decision,* erred in its interpretation of the pertinent regulation, 38 C.F.R. § 3.303(c). We therefore agree with the parties that we have jurisdiction over this appeal.

## II.

In order to revise a final VA decision on account of CUE, the following must be demonstrated:

> 1) Either the correct facts, as they were known at the time, were not before the adjudicator or the statutory or regulatory provisions extant at the time were incorrectly applied,

> 2) The error must be "undebatable" and the sort "which, had it not been made, would have manifestly changed the outcome at the time it was made," and

> 3) A determination that there was CUE must be based on the record and the law that existed at the time of the prior adjudication in question.

*Willsey v. Peake,* 535 F.3d 1368, 1371 (Fed. Cir. 2008) (citing *Russell v. Principi,* 3. Vet. App. 310, 313-14 (1992)).

Mr. Morris hinges his CUE claim on the argument that, in the *1988 Board Decision,* the Board incorrectly

applied 38 C.F.R. § 3.303(c) and that the *2008 Board Decision* and the decision of the Veterans Court now on appeal continued the error. His argument essentially is as follows: It is true that under § 3.303(c) a disability attributable to a personality disorder is not compensable. Reply Br. at 2. However, under 38 U.S.C. § 1111, a veteran claiming disability compensation under 38 U.S.C. § 1110 is entitled to a presumption that he was in sound condition when he entered service.[4] Thus, even when the record contains an in-service diagnosis of a personality disorder, in order to have that diagnosis defeat a claim for compensation under § 1110, the VA must rebut the presumption of sound condition under § 1111. According to Mr. Morris, if, as here, "no pre-service disability was noted, . . . the VA must in accordance with the presumption of sound condition show by clear and unmistakable evidence that the condition noted during service was a pre-service disability." Claimant's Br. at 12. That this requirement exists, Mr. Morris contends, is supported by the language of § 3.303(c), *id.* at 10-14, and the interpretation of § 3.303(c) set forth in two VA General Counsel opinions, *id.* at 14-19. Thus, Mr. Morris argues, the Board erred when it interpreted § 3.303(c) to mean that the in-service diagnosis of a personality disorder in and of itself was enough to defeat Mr. Morris's claim of a psychiatric disorder. Rather, the VA should have been required to demonstrate affirmatively that the personality disorder existed prior to service. In short, we understand Mr. Morris to be saying the following: I recognize that a personality disorder is not a compensable disability. I

---

[4] The versions of 38 U.S.C. §§ 1110 and 1111 in effect at the time of the *1988 Board Decision* are identical to the present versions of the statutes. *Compare* 38 U.S.C. § 310 (1982) *with* 38 U.S.C. § 1110 (2010) and 38 U.S.C. § 311 (1982) *with* 38 U.S.C. § 1111 (2010).

also recognize that, in my case, the record shows an in-service diagnosis of a personality disorder. However, before that diagnosis could serve to disqualify me from compensation, the VA should have been required to overcome § 1111's presumption of soundness by demonstrating that I had a personality disorder when I entered the service.

The government responds that the Veterans Court did not err in affirming the *2008 Board Decision*. The government starts from the premise that, in order to be entitled to compensation under 38 U.S.C. § 1110, a veteran must demonstrate that he or she presently suffers from a disability, that there was in-service incurrence or aggravation of a disease or injury, and that there is a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Resp't's Br. at 14. Next, relying upon our decision in *Terry v. Principi*, 340 F.3d. 1378, 1382 (Fed. Cir. 2003), the government contends that, if a disability cannot be attributed to an *injury* or *disease* incurred or aggravated in the line of duty, the disability is not compensable. In that regard, the government points out that § 3.303(c) states that a personality disorder is not a disease or injury within the meaning of § 1110. Resp't's Br. at 14 (citing *Terry*, 340 F.3d at 1382). "Accordingly," the government reasons, "pursuant to *Terry*, any disability attributable to personality disorders is not compensable." *Id*. In other words, "because a personality disorder is not a disease or injury, the condition cannot form the basis for an award of disability compensation." *Id*. at 16. The government thus takes the position that the Veterans Court correctly held that the Board did not err in not applying the presumption of soundness to Mr. Morris's claim. The reason is that because Mr. Morris's personality disorder was not a compensable injury or disease, it

could not be service connected. Therefore, § 1111's presumption of soundness did not apply in his case. *Id.* at 17. At the same time, the government argues that neither of the two VA General Counsel opinions upon which Mr. Morris relies supports his case. *Id.* at 20-22. Finally, the government makes the alternative argument that, even if the Veterans Court erred in its conclusion that § 3.303(c) renders § 1111's presumption of soundness inapplicable in this case, CUE did not occur because the purported error was not outcome determinative. *Id.* at 23-24.

## III.

Section 1110 provides compensation to a veteran for a disability resulting from an injury or disease incurred or aggravated during active duty. To demonstrate entitlement to compensation under § 1110, a veteran must establish: "(1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service." *Shedden v. Principi*, 381 F.3d 1163, 1167 (Fed. Cir. 2004). "[I]f a disability cannot be attributed to an 'injury' or 'disease' incurred or aggravated in the line of duty, the disability is not compensable." *Terry*, 340 F.3d at 1382.

We have previously observed that there is a "gap left by the statute with respect to the question of what kinds of conditions qualify as injuries or diseases for purposes of entitlement to veterans' benefits." *Id.* at 1383. The VA, however, has addressed this issue. Pursuant to its authority under 38 U.S.C. § 501 "to prescribe all rules and regulations which are necessary to carry out the laws administered by the [VA]," the VA promulgated the

regulation set forth at 38 C.F.R. § 3.303(c). As noted above, the regulation provides in relevant part as follows:

> *Preservice disabilities noted in service*: There are medical principles so universally recognized as to constitute fact (clear and unmistakable proof), and when in accordance with these principles existence of a disability prior to service is established, no additional or confirmatory evidence is necessary. . . . In the field of mental disorders, personality disorders which are characterized by developmental defects or pathological trends in the personality structure manifested by a lifelong pattern of action or behavior, chronic psychoneurosis of long duration or other psychiatric symptomatology shown to have existed prior to service with the same manifestations during service, which were the basis of the service diagnosis, will be accepted as showing preservice origin. Congenital or developmental defects, refractive error of the eye, personality disorders and mental deficiency as such are not diseases or injuries within the meaning of applicable legislation.

In *Terry*, we upheld the validity of § 3.303(c) as consistent with the § 1110. 340 F.3d at 1381-86.

Turning to the present case, under the plain language of § 3.303(c), a personality disorder is not a disease or injury within the meaning of § 1110, a point upon which both the government and Mr. Morris agree. *See* Reply Br. at 2; Resp't's Br. at 14; *see also Conley v. Peake*, 543 F.3d 1301, 1305 (Fed. Cir. 2008) ("Under 38 C.F.R. § 3.303(c), . . . personality disorders are considered '[c]ongenital or developmental defects' for which service connection cannot be granted because they 'are not diseases or injuries within the meaning of the applicable legislation.'"). *See*

*also* 38 C.F.R. § 4.9 ("[P]ersonality disorder and mental deficiency are not diseases or injuries in the meaning of the applicable legislation for disability compensation purposes."); § 4.127 ("Mental retardation and personality disorders are not diseases or injuries for compensation purposes . . . .").[5]  Thus, the personality disorder which the 1988 Board found Mr. Morris had fell outside the scope of the applicable legislation and therefore was not compensable.  The Board did not err in denying compensation for the disorder.

As seen, Mr. Morris tries to avoid the bar of § 3.303(c) by arguing that the 1988 Board erred by failing to grant him the presumption of soundness.  The effort fails, however.  Section 1111 grants veterans a statutory presumption of soundness only "for the purposes of section 1110," and § 1110, in turn, provides compensation only for an "injury" or "disease" contracted or aggravated in the line of duty.  If pursuant to a valid VA regulation (38 C.F.R. § 3.303(c)), a condition is not an injury or disease within the scope of § 1110, then § 1111 and the presumption of soundness simply do not come into play.  *Terry*, 340 F.3d at 1386 ("[W]hen sections 1110 and 1111 are read together, 'the term defect in section 1111 necessarily means a defect that amounts to or arises from disease or

---

[5]    The version of 38 C.F.R. § 4.9 in effect at the time of the *1988 Board Decision* is identical to the present version of the regulation.  *Compare* 38 C.F.R. § 4.9 (1982) *with* 38 C.F.R. § 4.9 (2011).  Although not identical to the present version of the regulation, the version of 38 C.F.R. § 4.127 in effect at the time of the *1988 Board Decision* treats personality disorders in the same manner.  *Compare* 38 C.F.R. § 4.127 (1982) ("Mental deficiency and personality disorders will not be considered as disabilities under the terms of the schedule.") *with* 38 C.F.R. § 4.127 (2011) ("Mental retardation and personality disorders are not diseases or injuries for compensation purposes . . . .").

injury.'" (quoting *Winn v. Brown*, 8 Vet. App. 510, 516 (1996)).  As noted in the *1988 Board Decision*, based upon the record before it, the Board found that, while in service in 1964, Mr. Morris exhibited a personality disorder, and under 38 C.F.R. § 3.303(c), as well as 38 C.F.R. §§ 4.9 and 4.127, a personality disorder is not a compensable "injury" or "disease."  Accordingly, we are unable to agree with Mr. Morris that the Board committed CUE when it denied his claim for service connection without applying § 1111's presumption of soundness.  *See 1988 Board Decision*.

Mr. Morris's argument that the presumption of soundness should be applied in the case of a personality disorder effectively conflates the diagnosis inquiry and the causation inquiry.  Diagnosis involves the observation of certain symptoms and characteristics that indicate the presence of a particular condition.  The diagnosis process does not implicate the question of whether the veteran was in sound condition when he or she entered service. That is because all that is relevant at the diagnosis stage is determining the service member's present condition. Once a diagnosis is made, however, as was the case here, the temporal relationship between the onset of symptoms and service must be examined to determine whether the disorder is service related.  It is only at this stage in the inquiry that the presumption of soundness becomes relevant.  Causation is not at issue in this case, however. Because Mr. Morris was diagnosed with a personality disorder, it was unnecessary to examine causality as personality disorders cannot legally be service related. *See Conley*, 543 F.3d at 1305 ("Under 38 C.F.R. § 3.303(c), . . . personality disorders are considered '[c]ongenital or developmental defects' for which service connection cannot be granted because they 'are not diseases or injuries within the meaning of the applicable legislation.'").  In effect, Mr. Morris is trying to circumvent the 1988 factual

finding that there was an in-service diagnosis of a personality disorder, which we cannot review, by importing the presumption of soundness into the diagnosis inquiry.

In support of his position, Mr. Morris highlights certain language within § 3.303(c). Specifically, he points to the following language:

> In the field of mental disorders, personality disorders which are characterized by developmental defects or pathological trends in the personality structure manifested by a lifelong pattern of action or behavior, chronic psychoneurosis of long duration or other psychiatric symptomatology shown to have existed prior to service with the same manifestations during service, which were the basis of the service diagnosis, will be accepted as showing preservice origin.

This sentence does not support Mr. Morris's argument, however. Section 3.303(c) states that based on universally recognized medical principles, certain disabilities arise from conditions that necessarily are unrelated to service and thus, by definition, can not be service related. The description of personality disorders within § 3.303(c) merely explains why personality disorders can not be service related, which the regulation emphasizes. ("[P]ersonality disorders and mental deficiency as such are not diseases or injuries within the meaning of applicable legislation."). *See also* 38 C.F.R. § 4.9 ("[P]ersonality disorder and mental deficiency are not diseases or injuries in the meaning of the applicable legislation for disability compensation purposes."); § 4.127 ("Mental retardation and personality disorders are not diseases or injuries for compensation purposes . . . ."). As far as mental disorders distinct from personality disorders are concerned, "chronic psychoneurosis of long duration or

other psychiatric symptomatology shown to have existed prior to service with the same manifestations during service, which were the basis of the service diagnosis, will be accepted as showing preservice origin." Thus, the language of § 3.303(c) does not support the argument that a personality disorder is a compensable disability unless it is shown to exist prior to service.

Nor do the two opinions from the VA General Counsel provide Mr. Morris with any help. DVA Op. Gen. Counsel Prec. 82-90 (July 18, 1990) discusses whether disorders of congenital or developmental origin may be service related. The opinion distinguishes between a disease, which is a condition that is capable of improvement or deterioration, and a defect, which is a condition that is not capable of improvement or deterioration. In making this distinction, the General Counsel states that hereditary "diseases" may qualify for service connection whereas hereditary "defects" are excluded from coverage by § 3.303(c). At the same time, DVA Op. Gen. Counsel Prec. 67-90 (July 18, 1990) discusses whether a hereditary disease always rebuts the presumption of soundness. Again focusing on the distinction between a "disease" and a "defect," the General Counsel states that hereditary "diseases," which are capable of improvement or deterioration, may be entitled to service connection. When the two opinions are read together, it is apparent that they are referring solely to hereditary *diseases* that are not "congenital or developmental defects"; such defects are expressly excluded from coverage by § 3.303(c). Indeed, DVA Op. Gen. Counsel Prec. 82-90 (July 18, 1990) makes clear that the terms "disease" and "defect" are mutually exclusive. Thus, contrary to Mr. Morris's contention, the two opinions provide no support for the proposition that "[c]ongenital or developmental defects, refractive error of the eye,

personality disorders, and mental deficiency" are entitled to the presumption of soundness.

In sum, according to the express language of 38 C.F.R. § 3.303(c), personality disorders are not diseases or injuries within the meaning of § 1110 and thus are not compensable.  Therefore, the Board and the Veterans Court did not err in holding the presumption of soundness inapplicable to Mr. Morris's case.  The *1988 Board Decision* therefore was not tainted by CUE.  As we hold there was no CUE in the *1988 Board Decision*, we need not address the government's alternative argument that, assuming there was CUE, the error was not outcome determinative.

### CONCLUSION

For the foregoing reasons, the decision of the Veterans Court is affirmed.

Each party shall bear its own costs.

*AFFIRMED*

# United States Court of Appeals
## for the Federal Circuit

---

**JACK D. MORRIS,**

*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**

*Respondent-Appellee.*

---

2011-7061

---

Appeal from the United States Court of Appeals for Veterans Claims in case no. 09-0017, Judge Robert N. Davis.

---

DYK, *Circuit Judge*, concurring.

I agree that the majority has reached the correct result and join the majority, but I think additional explanation is useful because the regulation is not immediately clear on its face. The statute provides that only an "injury" or "disease" that is service-connected is compensable. 38 U.S.C. §§ 1110, 1131. These terms are not defined in the statute, but the Department of Veterans Affairs regulations defining "injury" and "disease" are entitled to *Chevron* deference. *See Terry v. Principi*, 340 F.3d 1378, 1382 (Fed. Cir. 2003). Those regulations state that personality disorders are not injuries or diseases within the meaning of the statute. *See* 38 C.F.R.

§ 3.303(c) ("[P]ersonality disorders and mental deficiency as such are not diseases or injuries within the meaning of applicable legislation."); *id.* § 4.9 ("[P]ersonality disorder and mental deficiency are not diseases or injuries in the meaning of applicable legislation for disability compensation purposes."); *id.* § 4.127 ("Mental retardation and personality disorders are not diseases or injuries for compensation purposes.").

The first question is whether the regulation at issue, 38 C.F.R. § 3.303(c), defines "personality disorder." I think it does. The regulation provides, in relevant part:

In the field of mental disorders, *personality disorders which are characterized by developmental defects or pathological trends in the personality structure manifested by a lifelong pattern of action or behavior*, chronic psychoneurosis of long duration or other psychiatric symptomatology shown to have existed prior to service with the same manifestations during service, which were the basis of the service diagnosis, will be accepted as showing preservice origin.

38 C.F.R. § 3.303(c) (emphasis added). The most natural reading of this regulation is that a personality disorder is a disorder "characterized by developmental defects or pathological trends in the personality structure manifested by a lifelong pattern of action or behavior." *Id.* Thus, in theory, if a disorder did not exist before service, it would not fall into the category of a personality disorder, which requires a "lifelong pattern."

However, I do not read the regulation as applying the presumption of soundness or aggravation to personality disorders or as requiring proof of preservice origin or no aggravation, but only to require such a showing with respect to "chronic psychoneurosis of long duration or

other psychiatric symptomatology." *Id.* In other words, the clause "shown to have existed prior to service with the same manifestations during service" modifies only "chronic psychoneurosis of long duration or other psychiatric symptomatology," which—unlike personality disorders—may be compensable if they are shown not to have existed prior to service. *Id.* While the regulation then appears to state that all the listed items "will be accepted as showing preservice origin," that means merely that all such disorders are non-compensable. *Id.* Thus I agree that the majority here is correct in holding that the presumption of soundness does not apply to personality disorders.