# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-3296

SHAWN P. LACEY, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued July 11, 2019)                                                   Decided October 17, 2019)

*Jennifer A. Zajac*, of Oceanside, California, with whom *Linda Blauhut*, of Washington, D.C., was on the brief, for the appellant.

*Julia A. Turner*, with whom *Catherine C. Mitrano*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Christopher W. Wallace*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before SCHOELEN, ALLEN, and TOTH, *Judges*.

TOTH, *Judge*, filed the opinion of the Court. ALLEN, *Judge*, filed an opinion concurring in the judgment.

TOTH, *Judge*: The Veterans Retraining Assistance Program (VRAP) was a short-lived program intended to provide older veterans with job retraining for various high-demand occupations. VA denied Army veteran Shawn P. Lacey's application for VRAP benefits because he sought to use them to pursue a bachelor's degree at a four-year college rather than an associate degree (or a certificate attesting to a degree of similar nature) at a community college or technical school. Mr. Lacey appealed this decision to the Board, arguing that the statute passed by Congress only required a veteran to pursue a course that is *offered by* a community college or technical school and did not require the veteran to take such course *at* a community college or technical school.

Mr. Lacey is correct that the statute is at least ambiguous in this regard, as it provides no clear answer to whether benefits can be used at four-year colleges or are limited only to community colleges or technical schools. Further, because VA never issued any regulations or guidance interpreting the statute, there is no agency position that warrants deference. In the absence of any

considered agency position, and having exhausted the traditional tools of statutory construction, the Court concludes that the pro-veteran canon requires us to read the statute as including four-year colleges and institutions when the course at issue is *offered by* a community college or technical school.

## I. BACKGROUND

VRAP was part of the VOW to Hire Heroes Act of 2011, Pub. L. No. 112-56, § 211, 125 Stat. 711, 713-15. The program was designed to be limited in duration and scope; it was effectuated on July 1, 2012, and discontinued on March 31, 2014. § 211(a)(1), (k). Its basic purpose was to provide training to veterans aged 35 to 60, who were unemployed but not otherwise eligible for TDIU or VA education benefits, and who were not enrolled in other state or federal job training programs at the time of application. § 211(e)(1). The statute capped the number of eligible veterans at 45,000 for fiscal year 2012 and 54,000 from October 1, 2012, to March 31, 2014. § 211(a)(2). It also limited the benefits to 12 months, based on the monthly rate paid out for chapter 30 benefits. § 211(b).

The dispute in this case centers on the following language:

Retraining assistance. Except as provided by subsection (k), each veteran who participates in the program established under subsection (a)(1) shall be entitled to up to 12 months of retraining assistance provided by the Secretary of Veterans Affairs. Such retraining assistance may only be used by the veteran to pursue a program of education (as such term is defined in section 3452(b) of title 38, United States Code) for training, on a full-time basis, that—

(1) is approved under chapter 36 of such title [38 U.S.C. § 3670 et seq.];

(2) is offered by a community college or technical school;

(3) leads to an associate degree or a certificate (or other similar evidence of the completion of the program of education or training);

(4) is designed to provide training for a high-demand occupation, as determined by the Commissioner of Labor Statistics; and

(5) begins on or after July 1, 2012.

§ 211(b).

Army veteran Shawn P. Lacey was a student at Medaille College, a four-year college in Buffalo, New York, when he applied for educational benefits under VRAP. In his application, Mr.

Lacey noted that he was pursuing a bachelor's degree in business administration in information systems.

On July 26, 2012, the VA regional office (RO) informed him that he was eligible for benefits but that the program he sought to pursue failed to meet the criteria under VRAP because it was "not offered at a community college or technical school." R. at 76. He appealed to the Board, explaining at his hearing that he had already received an associate's degree and needed only two additional years to complete his bachelor's degree. Following the hearing, he submitted materials to the effect that his course in business administration in information systems at Medaille College constituted an approved "program of education" under VRAP and otherwise met all qualifications. R at 17-18.

The Board denied Mr. Lacey's claim in an August 2, 2017, decision on the grounds that Medaille College was not a community college or technical school. Save for this requirement, the Board recognized that Mr. Lacey met all eligibility criteria. In construing the statute, the Board invoked the negative implication canon, otherwise known under the Latin phrase *expressio unius est exclusio alterius*, in reasoning that Congress, by mentioning community colleges and technical schools, sought intentionally to exclude from the program four-year institutions such as colleges and universities.

On appeal to this Court, both Mr. Lacey and the Secretary claim that the plain language supports their reading of the statute. Mr. Lacey advocates a literal reading of the statutory terms, which require only that a veteran pursue a program of education that is "offered by" a community college or technical school and contain no discrete requirement that a veteran *enroll in* or *take courses at* such institutions. He marshals several arguments claiming that the statutory context supports his reading. First, he notes that Congress expressly referenced 38 U.S.C. § 3542(b) to define the relevant terms "program of education" and that his program easily satisfies this definition. Further, he points to section 3452(b)'s use of the term "educational institution," which section 3452(c) defines to include universities and four-year colleges. Next, Mr. Lacey claims that the parenthetical language in the phrase "leads to an associate degree or certificate (or other similar evidence of completion of the program of education or training)" serves merely as an evidentiary requirement in which Congress used purposefully inclusive language to signal its intent to include a broad array of programs of education and not merely those that lead to an associate degree.

Finally, he maintains that the statute's remedial nature and purpose show that Congress intended to provide broad flexibility to veterans to pursue a wide variety of educational programs.

The Secretary counters that the plain language of the statute makes apparent that Congress sought to limit eligibility to veterans pursuing programs of education at community colleges and technical schools. Per the Secretary, the most natural reading of "offered by a community college or technical school" implies that a veteran must pursue such courses at the same community college or technical school that offers them. In light of this language, the Secretary reasons that "it must be presumed that Congress intended to give meaning to the requirement that the course of study be offered at a community college or technical school when it enacted VRAP." Sec. Br. at 6. Contra Mr. Lacey's position, the Secretary points to statutory language requiring that the program "leads to an associate degree or certificate (or other similar evidence of the completion of the program of education or training)" to show that Congress, in singling out associate degrees, intended benefits to apply only to community colleges or technical schools where such degrees are offered. And as a final measure of support, the Secretary cites to the legislative history, which contains extensive discussion about the benefits of community colleges and technical schools.

## II. ANALYSIS

The Court reviews statutory construction questions de novo. *Martinez v. Wilkie*, 31 Vet.App. 170, 175 (2019). Statutory analysis always begins with the text of the statute itself to determine whether the language is plain and unambiguous. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). In making this determination, we look to "the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id*. at 341. If the statutory language is unambiguous and "the statutory scheme is coherent and consistent," then the Court's statutory inquiry comes to an end. *Id*. at 340. In such cases, the court "must enforce [the statute] according to its terms." *King v. Burwell*, 135 S. Ct. 2480, 2489 (2015).

Several canons of statutory construction guide our review of the statute's plain language. One basic canon is that words generally take "their ordinary, contemporary, common meaning," which may be derived from dictionaries from the era of the statutory provision's enactment. *Sandifer v. U.S. Steel Corp.*, 571 U.S. 220, 227 (2014). To derive their meaning, statutory terms are not read in isolation, but "must be read in their context and with a view to their place in the overall statutory scheme." *Davis v. Michigan Dep't. of Treasury*, 489 U.S. 803, 809 (1989).

4

"Ambiguity is a creature not of definitional possibilities but of statutory context." *Brown v. Gardner*, 513 U.S. 115, 118 (1994). Thus, in assessing the language of a statute, courts review the overall statutory scheme "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error." *Roper v. Nicholson*, 20 Vet.App. 173, 178 (2006).

The dispute in this case centers on the following language: "Such retraining assistance may only be used by the veteran to pursue a program of education (as such term is defined in section 3452(b) of title 38, United States Code) for training, on a full-time basis, that . . . is offered by a community college or technical school" and "leads to an associate degree or a certificate (or other similar evidence of the completion of the program of education or training)." § 211(b), 125 Stat. at 713.

Examining the structure, the first thing to note is the placement of the limiting term "only" at the beginning of the provision, which serves as a framing mechanism to restrict the availability of benefits to the express conditions that immediately follow. The second class of restricting factors follows shortly in the form of two relevant limitations to the nature of the program of education that a veteran may pursue: it must be one that "is offered by a community college or technical school," § 211(b)(2), and "leads to an associate degree or a certificate (or other similar evidence of the completion of the program or training)." § 211(b)(3).

We begin with the term "program of education" because Congress defined this term via reference to section 3452. That statute defines "program of education" broadly, noting that it "means any curriculum or any combination of unit courses or subjects pursued at an educational institution which is generally accepted as necessary to fulfill requirements for the attainment of a predetermined and identified educational, professional, or vocational objective." § 3452(b). In turn, subsection (c) of 3452 defines "educational institution" broadly to include "correspondence school, business school, junior college, teacher's college, college, normal school, professional school, university, or scientific or technical institution, or other institution furnishing education for adults."

If this were the extent of the statute, there would be no dispute here as both Mr. Lacey's "program of education" and "educational institution" fall squarely within the broad reach of the definitions provided by section 3452. The crux of the dispute, however, focuses on the qualifying

language that immediately follows. As to these terms, Congress provided no express definitions and so the Court must ascertain the meaning of the various terms and how they interrelate with each other. *See Terry v. Principi*, 340 F.3d 1378, 1382-83 (Fed. Cir. 2003) ("In the absence of an express definition,  we presume that Congress intended to give [statutory] words their ordinary meanings.").

Analyzing the relevant terms in order of appearance, we begin with the verb "to pursue." A contemporaneous dictionary provides various definitions for this verb including, most relevant to this context: "to find or employ measures to obtain or accomplish." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 1011 (11th ed. 2014). Both the plain language and context of the statute support the conclusion that Congress intended the term "pursue" to carry its common meaning as something akin to engaging in a course of action toward a desired end. That Congress opted for the word "pursue" rather than language such as "complete" or "successfully obtain" shows that it did not intend to condition benefits on the attainment of a degree but only that a veteran pursue a program of education that could ultimately culminate in a degree.

The focal point of the dispute centers on the language mandating that the program of education be one that "is offered by a community college or technical school" and "leads to an associate degree or certificate (or other similar evidence of the completion of the program of education or training)." Congress's use of the passive voice of the verb "offer" highlights the fact that the "program of education or training" remains the operative subject, which in turn, is "offered by a community college or technical school." Coupled with the passive voice, the use of the preposition "by" merely identifies the agent performing the action—a community college or technical school. The verb "offer," when linked with a discrete object as it is here ("program of education or training") commonly means to make a good or service available to another. *See* NEW OXFORD AMERICAN DICTIONARY 1217 (3d ed. 2010) (defining "offer" as "make available for sale" or "provide access or opportunity").

Subjecting this phrase to closer scrutiny reveals two possible interpretations. Mr. Lacey is correct that, read in the most literal light, this language merely requires that the program of education consist of a course made available by ("offered by") a community college or technical school regardless of where such courses are ultimately taken. This reading rejects any necessary connection between the type of entity that offers the course and the one that ultimately provides it. Mr. Lacey contends that this language amounts to a deliberate legislative choice by Congress,

6

which could have conditioned eligibility on enrollment or otherwise drafted the statute to include terms requiring a veteran to take classes "at" such schools. On this point, Mr. Lacey cites to federal statutes such as 38 U.S.C. § 3680(a)(2), containing language restricting benefits to "eligible veterans and eligible persons enrolled in courses set forth," to demonstrate that Congress could have readily employed similar language in VRAP had it so desired. He also notes that a different section of VRAP does in fact condition eligibility on a veteran not being "enrolled in" any federal or state job training program at the time of application. § 211(e)(1)(F), 125 Stat. at 714. Under his reading, the fact that Congress declined to use such language signals that it sought to allow veterans a significant measure of flexibility in choosing where to pursue a program of education.

But the Secretary also stands on solid footing in countering that everyday usage supports the notion that pursuing a course of education "offered by" a community college or technical school implies that such courses must be taken at the same community college or technical school that offers them. For further support, the Secretary points to the next limiting provision, namely that the program of education "leads to an associate degree or a certificate (or other similar evidence of the completion of the program of training)," § 211(b)(3), 125 Stat. at 713, to show that Congress singled out only one type of degree—an associate degree—thus implicitly rejecting a bachelor's degree as a qualifying program.

This supporting contention is less convincing, however, as this clause merely identifies various forms of evidence—whether an associate degree, certificate, or other similar evidence—sufficient to demonstrate completion of the program. Once again, the dictionary definition of the operative verb "leads to" is broad in scope, "to tend toward or have a result (study leading to a degree)." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY at 706. As in the case of "pursue," Congress's use of the open-ended verb "leads to" shows that it did not seek to condition eligibility on the attainment of a degree but merely that the program ultimately culminate with some form of proof of completion. Further, the use of the disjunctive term "or" coupled with the variety of sources capable of demonstrating completion ("other similar evidence") shows that Congress intentionally sought to cast a wide net in terms of the programs that it sought to cover.

Read in its full context, this provision serves to expand rather than limit the scope of the statute by highlighting the breadth of degrees, certificates, or documents capable of serving as proof of completion of the program of education or training. The Secretary's reading would have more traction had Congress limited this provision to only associate degrees or otherwise tethered

7

the eligibility to a narrow, discernible class of degrees. But this provision does just the opposite: it presents a seemingly limitless number of ways ("or other similar evidence of proof of completion") through which a veteran can document completion of the program. Programs of education or training are closely associated with the types of degrees they confer on participants; the difference between a bachelor's degree, associate degree, technical certificate, or other documentation is not a minor one. That Congress all but erased these distinctions by allowing any type of degree is of no small significance.

The Board invoked the non-implication canon as decisive in its reading of the statute and reasoned that the failure to expressly include four-year colleges among the institutions cited by the statute showed that Congress intended to exclude such institutions. R. at 10. But this analysis overlooks the salient fact that Congress expressly defined "program of education" by reference to section 3452(b). As discussed, this definition contains an expansive list of the types of courses at an "educational institution" that fall under that term. Significantly, section 3452(c) defined "educational institution" to expressly *include* four-year colleges and universities. For this reason, the negative implication canon carries little probative weight in determining a statutory meaning, because Mr. Lacey's program of education appears to fall within the definition provided by Congress. Likewise, the Board's citation to regulations from VA and other federal agencies for guidance as to various definitions is misplaced where Congress provided its own definition when it referenced section 3452 in VRAP. When Congress defines a term, neither courts nor agencies are permitted to substitute their own definition, even if such definition might constitute an improvement. *AK Steel Corp. v. United States*, 226 F.3d 1361, 1372 (Fed. Cir. 2000).

The operative question in statutory construction is "whether Congress has directly spoken to the precise question at issue." *Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984). A statute is deemed ambiguous when traditional methods of statutory interpretation fail to yield a definite meaning. *Id.* at 843-44. Here, the operative question is not whether Congress intended veterans to use VRAP benefits at community colleges or technical schools but whether Congress sought to limit such benefits to only those institutions.

Stitching the component parts together, we are presented with a statute that is at once expansive in its language and yet contains discrete, if implied, limitations. Playing in Mr. Lacey's favor is the sweeping and open-ended nature of the verbs Congress used: "pursue," "offered by," and "leads to." Further, the express definition by Congress of "program of education" in section

3452(b) is expansive and refers to "educational institutions" that include four-year institutions as defined by section 3452(c). Likewise, the expansive array of degrees or certificates capable of demonstrating completion suggests that Congress did not intend to limit the courses of study to a narrow class of courses or programs. This factor is reinforced by the fact that the tuition amounts and time allotment for use of such benefits are the same regardless of the program of education: each qualifying veteran receives up to 12 months of benefits based on the monthly rate paid out under chapter 30 of the GI Bill. Finally, the term "offered by" is not necessarily synonymous with "offered at" or "enrolled at," which require only that a veteran pursue a program of education made available by community colleges or technical schools.

By contrast, two main points play in the Secretary's favor. First, a natural reading of "offered by" suggests at least an implied limitation that the veteran pursue the program of education at the same institution where such program is offered. Second, there is little doubt that community colleges and technical schools serve as the primary focus of the statute. Aside from the cross-reference to section 3452, there is no express mention of colleges or four-year institutions. Likewise, the legislative history contains extensive discussion about the benefits of community colleges and technical schools and leaves little doubt that Congress drafted VRAP with an eye toward bolstering attendance at such institutions.

Still, the Secretary's position and the legislative history are less instructive in answering the operative question in dispute here, namely whether Congress clearly intended to limit the use of benefits to *only* these institutions. On this question, the statute stands closer to equipoise between the respective positions of the parties. In cases such as this, where a statute is susceptible to more than one accepted meaning, a court must determine whether "all but one of the meanings is ordinarily eliminated by context." *Deal v. United States*, 508 U.S. 129, 131-32 (1993). And here, the context of the statute pulls in markedly different directions. Certain aspects such as the limiting phrase "may only be used" coupled with the natural meaning of "offered by a community college or technical school" strongly support the Secretary's reading; by contrast, the remainder of the statute, including the expansive definition of "program of education" and the broad array of suitable degrees or certificates shows that Congress did not intend to set specific limitations but sought to allow veterans to pursue a wide variety of programs of education. Significantly, it would not have been difficult for Congress to draft a statute that limited benefits only to veterans enrolled at or taking classes at a community college or technical school. Whether this omission was the

product of hasty drafting or a deliberate legislative choice by Congress is immaterial: in either event the statute is ambiguous.

Where the contextual clues in a statute do not reveal a single accepted meaning, it is "eminently reasonable to conclude that [a statute's] silence is meant to convey nothing more than a refusal to tie the agency's hands." *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 222 (2009). This approach "is premised on the theory that a statute's ambiguity constitutes an implicit delegation from Congress to the agency to fill in the statutory gaps." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000). Thus, the normal course of action in such cases would be to consult the agency's official interpretation of the statute and determine whether it warranted deference. *See Cuozzo Speed Technologies, LLC v. Lee*, 136 S. Ct. 2131, 2142 (2016) (Where a statute leaves a gap or is ambiguous, courts "typically interpret it as granting the agency leeway to enact rules that are reasonable in light of the text, nature, and purpose of the statute."). Here, however, VA never promulgated any regulations or issued any guidance constituting an official agency interpretation of various terms and so there is no position to which we can defer. *See United States v. Mead Corp.*, 533 U.S. 218, 226-27 (2001) (holding that deference is only warranted to agency interpretations promulgated in exercise of an authority delegated by statute).

In the absence of a clear answer from the text and structure of the statute or a countervailing agency position to which deference is owed, we are left only with one remaining canon of construction, namely the injunction that interpretive doubts should be resolved in favor of the veteran. *Gardner*, 513 U.S. at 118. Here, both Mr. Lacey and the Secretary posited reasonable readings of the statute. Indeed, this case may very well have turned out differently had VRAP existed longer and the Secretary had time to issue official guidance as to the agency's position on issues raised by the statute. But that's not what happened here, and the Court is left with a dispute for which the statute provides no clear answer. By all accounts, Mr. Lacey fulfilled all the statutory requirements save the disputed criteria and worked diligently to pursue his education. Absent a clear statutory answer or any countervailing considerations, the pro-veteran canon compels the Court to read the statute in Mr. Lacey's favor. For this reason, we conclude that Mr. Lacey's courses at a four-year institution were covered under VRAP.

### III. CONCLUSION

We REVERSE the Board's determination denying Mr. Lacey VRAP benefits because he was not enrolled at a community college or technical school. The August 2, 2017, Board decision is VACATED and the matter REMANDED for further consideration consistent with this opinion.

ALLEN, *Judge*, *concurring in the judgment*: Although I concur in the judgment we have reached today, I write separately because I find the relevant statutory provision unambiguous. As the Court explains, the parties' dispute turns on the proper interpretation of the following statutory language: "Such retraining assistance may only be used by the veteran to pursue a program of education (as such term is defined in section 3452(b) of title 38, United States Code) for training on a full-time basis, that . . . is offered by a community college or technical school" and "leads to an associate degree or a certificate (or other similar evidence of the completion of the program of education or training) . . . ." § 211(b)(2)-(3). More narrowly, the issue is whether an eligible "program of education" need only be *offered* at a community college or technical school, or whether a veteran seeking retraining assistance must also be *enrolled* in such a "program of education" at a community college or technical school.

"Our first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case. Our inquiry must cease if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (quoting *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 240 (1989)). I find this case straightforward. To be eligible for VRAP benefits, Congress said, in relevant part, that "a program of education" needs to be "*offered* by a community college or technical school." § 211(b)(2)-(3) (emphasis added). Congress did not say a veteran needs to be "enrolled" in that program. Had Congress meant to condition receipt of VRAP benefits on *enrollment* at a community college or technical school, Congress easily could have done so.

Indeed, in the very statute at issue, Congress conditioned receipt of VRAP benefits on a veteran not being "enrolled" in certain job training programs. § 211(e)(1)(F). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23 (1983) (citation, quotation

11

marks, and alteration omitted). *Russello* is instructive here, and there is no indication that Congress unintentionally included "enrolled" in one portion of the statute, but used "offered" in a different portion of the statute. Thus, I find the statute to unambiguously state that a veteran need only pursue a "program of education" that is "offered by a community college or technical school" to fall within the meaning of these discrete statutory provisions. § 211(b)(2)-(3). The plain language of the statute demonstrates that a veteran does not need to be enrolled at the "community college or technical school" to be eligible for VRAP benefits.

Further, this meaning would not render the statutory scheme inconsistent because the statute does not include a prohibition, either explicit or implicit, on affording VRAP benefits to veterans enrolled at a school other than a "community college or technical school." *See Robinson*, 519 U.S. at 340 (The Court's inquiry "cease[s] if the statutory language is unambiguous and 'the statutory scheme is coherent and consistent.'" (citing *Ron Pair Enters.*, 489 U.S. at 240)). Even the requirement that the "program of education" must "lead[ ] to an associate degree or a certificate" is not inconsistent with the interpretation that VRAP benefits can be used when the veteran is not enrolled at a community college or technical school. This is because Congress went on to explicitly state that "other similar evidence of the completion of the program" would suffice to meet this statutory requirement. § 211(b)(3). Thus, a veteran can obtain benefits if enrolled in a program that does not lead, specifically, to an associate degree or certificate. Finally, reading the statute in accordance with its plain meaning does not render the statute incoherent because the plain meaning is simply that the statute does not limit VRAP benefits to those veterans who are enrolled at a "community college or technical school." *See Robinson*, 519 U.S. at 340.

The Court's analysis must begin and end with the plain meaning of the statute. *Id.* Absent a statutory ambiguity, a court strays beyond its proper role when it looks to matters beyond the words a legislative body employed. Because I find the statute unambiguous, I would have concluded the analysis with the plain meaning of the statute. For these reasons, I respectfully concur in the judgment only.