﻿Citation Nr: AXXXXXXXX
Decision Date: 01/30/20 Archive Date: 01/30/20

DOCKET NO. 190423-18501
DATE: January 30, 2020

ORDER

Entitlement to service connection for type II diabetes mellitus (DMII) with hypertension is granted.

Entitlement to service connection for a bilateral eye disorder, to include as secondary to DMII, is denied.

FINDINGS OF FACT

1. The Veteran has a current DMII diagnosis.

2. The evidence is at least in equipoise that the Veteran was exposed to an herbicide agent.

3. The evidence is at least in equipoise that the Veteran’s hypertension is secondary to his DMII.

4. The preponderance of evidence is against finding that the Veteran has a current eye disorder related to service.

CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for DMII with hypertension have been met. 38 U.S.C. §§ 1101, 1110, 1112, 1113; 38 C.F.R. §§ 3.303, 3.307, 3.309.

2. The criteria for entitlement to service connection for a bilateral eye disorder, to include as secondary to DMII, have not been met. 38 U.S.C. §§ 1101, 1110, 1112, 1113; 38 C.F.R. §§ 3.303, 3.307, 3.309, 3.310.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Board notes that the rating decision on appeal was issued in March 2019. In September 2018, the Veteran elected the modernized review system. 38 C.F.R. § 19.2(d).

The Veteran served on active duty from July 1963 to July 1967. He served honorably in the U.S. Air Force, including service in Southeast Asia during the Vietnam Era. The Board thanks the Veteran for his service to our country.

The Veteran selected the Supplemental Claim lane when he opted in to the Appeals Modernization Act (AMA) review system by submitting a Rapid Appeals Modernization Program (RAMP) election form. Accordingly, the March 2019 AMA Rating Decision considered the evidence of record as of the date of the March 2019 rating decision. 

In April 2019, the Veteran timely appealed the March 2019 Rating Decision to the Board and requested a hearing. The Veteran testified before the undersigned at a Board videoconference hearing in September 2019. A transcript of the hearing is of record. A 90-day evidence hold followed the hearing. The day of the hearing, the Veteran submitted additional evidence.

The Board notes that the RO indicated in its March 2019 Rating Decision both that “new and relevant evidence” was received in this case to reopen the Veteran’s claims (although erroneously referring to the higher standard of “new and material evidence” with respect to the eye claim), and also that new and relevant evidence was not received, in resolving any doubt in the Veteran’s favor, the Board finds that the RO determined that new and relevant evidence was received with respect to both claims.

Service Connection

Service connection may be granted for disability due to disease or injury incurred in or aggravated by active military service. 38 U.S.C. § 1110; 38 C.F.R. §§ 3.303, 3.304. Service connection may also be granted for any disease diagnosed after discharge when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303. To substantiate a claim of service connection, there must be evidence of: (1) a current disability; (2) a disease, injury, or event in service; and (3) a nexus or causal relationship between the claimed disability and the disease, injury, or event in service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004).

Decisions of the Board shall consider all information and lay and medical evidence of record in a case. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.303(a). Competent lay evidence is any evidence not requiring that the proponent have specialized education, training, or experience. Lay evidence is competent if it is provided by a person who has knowledge of facts or circumstances and conveys matters that can be observed and described by a layperson. 38 C.F.R. § 3.159(a)(2). This may include some medical matters, such as describing symptoms or relating a contemporaneous medical diagnosis. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007). Competent medical evidence is evidence provided by a person who is qualified through education, training, or experience to offer medical diagnoses, statements, or opinions. 38 C.F.R. § 3.159(a)(1). 

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. When all of the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the veteran prevailing in either event, or whether a fair preponderance of the evidence is against the claim, in which case the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990).

1. Entitlement to service connection for DMII with hypertension is granted.

The Veteran contends that service connection for DMII is warranted. The Board agrees.

If a veteran was exposed to an herbicide agent during active service and has contracted an enumerated disability, such as DMII, to a degree of 10 percent or more disabling at any time after service, service connection is warranted even though there is no record of such disease during service. 38 U.S.C. § 1116; 38 C.F.R. § 3.307(a)(6), 3.309(e).

Any veteran who served in the Republic of Vietnam during the period beginning January 9, 1962 and ending on May 7, 1975, is presumed to have been exposed to an herbicide agent. 38 C.F.R. § 3.307(a)(6)(iii). 

Additionally, any individual who performed service in the Air Force or Air Force Reserve under circumstances in which the individual concerned regularly and repeatedly operated, maintained, or served onboard C-123 aircraft known to have been used to spray an herbicide agent during the Vietnam era is presumed to have been exposed to an herbicide agent. Under this paragraph, “regularly and repeatedly operated, maintained, or served onboard C-123 aircraft” means that the individual was assigned to an Air Force or Air Force Reserve squadron when the squadron was permanently assigned one of the affected aircraft and the individual had an Air Force Specialty Code indicating duties as a flight, ground maintenance, or medical crew member on such aircraft. 38 C.F.R. § 3.307(a)(6)(v).

The U.S. Court of Appeals for Veterans Claims has issued a precedential decision directing attention to the fact that the VA Compensation Service has acknowledged that there is some evidence that the herbicides used on Thailand base perimeters may have been either tactical, procured from Vietnam, or a commercial variant of much greater strength and with characteristics of tactical herbicides. Parseeya-Picchione v. McDonald, 28 Vet. App. 171, 176 (2016) (quoting Comp. & Pension Serv. Bull. (U.S. Dep’t of Veterans Affairs, Washington, D.C.), May 2010, at 3).

In a February 2016 disability benefits questionnaire, the Veteran’s private treatment provider rendered a diagnosis of DMII with hyperglycemia. In a section in which the provider is instructed to list additional diagnoses that pertain to diabetes mellitus, the provider listed hypertension, hyperlipidemia, and carotid stenosis. The provider indicated that the Veteran does not have diabetic retinopathy. In a section in which the provider is instructed to indicate which of the listed disorders, including hypertension and eye conditions other than diabetic retinopathy, are at least as likely as not due to diabetes mellitus, the provider checked the box for hypertension but not for eye conditions other than diabetic retinopathy. In a section in which the provider is instructed to indicate whether any of the listed disorders, including hypertension and eye conditions other than diabetic retinopathy, are at least as likely as not permanently aggravated by diabetes mellitus, the provider affirmatively indicated that none of the disorders was permanently aggravated by diabetes mellitus.

As the Veteran’s current DMII with hypertension disorder is established, the question as to whether the Veteran was at least as likely as not exposed to an herbicide agent remains.

The Veteran contends that he was exposed to herbicide agents during a layover in the Republic of Vietnam (Vietnam) en route to his TDY station at Clark Air Force Base (Clark) in the Philippines. He also contends that he was exposed as a jet engine mechanic at Clark. The also has provided photographs with markings indicating the “holding area” where he was on the runway at Ubon Royal Thai Air Force Base which is located near the perimeter of the base. Service records confirm a layover at Ubon.

The RO has made a favorable finding that the Veteran served overseas in Thailand. In April 2017 correspondence, he stated that en route to Clark, he and other servicemembers stopped at Ubon Royal Thai Air Force Base (Ubon) in Thailand, where they deplaned and boarded a cargo plane. The Veteran has submitted a photo of the location where he was on the Ubon Air Base.

The Veteran stated that the plane then had a fast and rough landing in Cam Ranh Bay, Vietnam, the roughness of which was due, according to a crew member, to small arms fire. He stated that they were transported to a mess hall, which was closed. He stated that they were told that they need not document the stop as it was just a layover. He stated that from there they flew to Clark, where he spent his temporary duty servicing various aircraft arriving from various areas in Vietnam.

At the September 2019 hearing, the Veteran testified that he arrived at Clark via Ubon and Cam Ranh Bay. He testified that at Ubon, he and other servicemembers deplaned and were told to transfer their gear to another transport. His representative presented a picture of a C-123 and he confirmed that that was the type of transport that they boarded to go to Clark. He testified that he was told it was about 1050 miles from Ubon to Clark and estimated that such a flight should take approximately 3 hours. He testified that they deplaned at Cam Ranh Bay because they were hungry but that the mess hall was closed; they were provided C rations. He estimated that they were at Cam Ranh Bay for 3 or 4 hours.

The Veteran’s spouse testified that they had met in 1963 and were married in 1965. She testified that when he was traveling to Clark, she had wondered why he took so long to contact her about his arrival, and that when he called her, he had told her they had made a stop in Cam Ranh Bay, where they had gone in for a hard landing due to gunfire.

With respect to his duties at Clark, the Veteran testified that as a jet engine mechanic, his primary duty was working on J-79 engines; however, as they did not have a lot of work involving the J-79s, they performed whatever tasks the crew chief needed, including maintenance of C-123 aircraft. 

A December 1965 travel voucher submitted by the Veteran indicates that he arrived at Ubon in the afternoon; departed one hour later; and arrived at Clark the next day, more than 8 hours later.

Performance reports from June 1965 to November 1966 state that during his temporary duty he was assigned to engine conditioning and performed in an outstanding manner. They positively note his initiative and dependability.

According to a June 2017 Defense Personnel Records Information Retrieval System (DPRIS) response to an information inquiry, U.S. Air Force station listings for 1966 and unit histories did not report on the Veteran’s or other unit personnel’s air routes, flight plans, or possible layovers. 

Resolving any reasonable doubt in the Veteran’s favor, the Board finds that he was at least as likely as not exposed to an herbicide agent. The Board finds that the Veteran is competent to make statements as to his military service and history. His layover in Thailand is corroborated by service records. The record does not establish that the Veteran’s squadron was permanently assigned to maintain C-123 aircraft to meet the requirements of 38 C.F.R. § 3.307(a)(6)(v). The DPRIS response states that unit histories do not confirm his air routes, flight plans, or possible layovers; however, the Board observes that this is not necessarily negative evidence weighing against his claim.

As the evidence is at least in equipoise that the Veteran was exposed to herbicide agents, service connection for DMII with hypertension is warranted. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

2. Entitlement to service connection for a bilateral eye disorder, to include as secondary to DMII, is denied.

The Veteran contends that entitlement to service connection for macular degeneration secondary to DMII is warranted. The Board finds that the preponderance of evidence is against the claim.

Service connection is warranted for a disability that is proximately due to or the result of a service-connected disability. 38 C.F.R. § 3.310(a). To establish secondary service connection there must be evidence: (1) of a current disability (for which secondary service connection is sought); (2) of an already service-connected disability; and (3) that the current disability for which service connection is sought was either (a) caused or (b) aggravated by the service-connected disability. 38 C.F.R. § 3.310(a); see Allen v. Brown, 7 Vet. App. 439 (1995) (en banc).

In this case, there is no competent medical evidence that the Veteran has a current eye disorder. There are no notations or diagnoses of an eye disorder in the Veteran’s treatment records. His claim is for macular degeneration; however, he is a layperson and does not profess to have the medical expertise required to diagnose such an eye disorder. Jandreau at 1377. Nor is there competent lay evidence of a current eye disorder. The record includes no statements or reports of current symptoms of an eye disorder. While he testified that his doctor had told him macular degeneration is caused by diabetes, he did not detail whether the doctor’s statement was based on a diagnosis of an eye disorder or his own lay statements of an eye disorder; nor did he detail when the doctor’s statement was made.

Additionally, there is no competent medical evidence linking an eye disorder to the Veteran’s DMII or otherwise to his service. His testimony that his doctor had told him that his macular degeneration is caused by diabetes is of low probative value as it conflicts with the medical evidence of record. As detailed above, in the February 2016 disability benefits questionnaire, his treatment provider did not diagnose any eye disorders as pertaining to diabetes mellitus, indicated that he does not have diabetic retinopathy, indicated by omission that he does not have an eye disorder due to diabetes mellitus, and affirmatively indicated that he does not have any disorders permanently aggravated by diabetes mellitus.

The Veteran does not contend that an eye disorder had its onset in service and his active duty service treatment records do not reflect any complaints, findings, treatment, or diagnosis of an eye disorder. In a July 1967 report of medical examination, clinical eyes, ophthalmoscopic, pupils, and ocular motility evaluations returned normal. While defective vision was noted in the summary of defects and his eyes were noted as 2 in the PULHES physical profile, myopia and a 2 in the PULHES profile were also noted in a May 1963 entrance examination. Congenital or developmental defects and refractive error of the eye are not considered to be a disease or injury with the meaning of the statutes governing service connection. See 38 C.F.R. §§ 3.03(c), 4.9; see Terry v. Principi, 340 F.3d 1378, 1384 (Fed. Cir. 2003) (upholding VA regulation that refractive errors of the eye are a congenital defect and thus do not constitute an injury or disease incurred in service).

The Board notes that the Veteran has not been afforded an examination to determine the nature and etiology of an eye disorder. In certain circumstances VA bears a duty to assist the Veteran. 38 C.F.R. § 3.159. VA must provide a medical examination or obtain a medical opinion if there exists (1) competent evidence of a current disability; (2) evidence of an in-service event, injury, or disease; and (3) an indication that the current disability may be associated with the Veteran’s service or another service-connected disability; but (4) there is otherwise insufficient competent medical evidence to decide the claim. McLendon v. Nicholson, 20 Vet. App. 79, 86 (2006). However, as there is neither competent medical nor lay evidence indicating a current eye disorder is related to service or a service-connected disability, the first requirement under McLendon has not been met.

After reviewing all the evidence of record, the Board finds that the preponderance of evidence is against granting service connection for an eye disorder. The Board has considered the doctrine of reasonable doubt but finds that the record does not provide an approximate balance of negative and positive evidence on the merits. The claim is, therefore, denied. Gilbert, 1 Vet. App. at 55; 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

 

M. C. GRAHAM

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board M. Vashaw, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.